```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------------x
WILLIAM PRENTICE,

                    Plaintiff,

       -against-

PORT AUTHORITY OF NEW YORK AND NEW JERSEY,

                    Defendant.
----------------------------------------------------------------------------x
```

**FILED**
**CLERK**

4:07 pm, May 23, 2017

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

Memorandum of
Decision & Order
15-cv-738(ADS)(AKT)

<u>APPEARANCES:</u>

**Reynold A. Mauro, Esq.**
*Attorney for the Plaintiff*
353 Veterans Memorial Highway
Commack, NY 11725

**Office of the General Counsel**
   **The Port Authority of New York & New Jersey**
*Attorneys for the Defendant*
225 Park Avenue South, 13th Floor
New York, NY 10003
         By:   Karla D. Denalli, Esq.

**SPATT, District Judge:**

Presently before the Court in this employment discrimination case is a motion by the Defendant Port Authority of New York and New Jersey (the "Port Authority"), pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P.") 56, seeking summary judgment and dismissal of the complaint.

For the reasons that follow, that motion is granted as to the federal claims over which the Court has original jurisdiction, and the Court declines to exercise supplemental jurisdiction over the remaining state law cause of action.

## I. BACKGROUND

A. The Current Record

Before turning to the salient facts, the Court makes a few initial observations regarding the record in this case.

First, the Court's recitation of the material facts is based solely on the Defendant's Local Rule 56.1 Statement and the Court's evaluation of the supporting evidence in the record.

In this regard, despite being served with the Defendant's Local Rule 56.1 Statement on May 16, 2016, and October 21, 2016, the Plaintiff, apparently in violation of the Local Civil Rules and this Court's Individual Motion Practices, never served a counter-statement of facts or otherwise materially disputed the Defendant's version. *See* Local Civil Rule 56.1(b); Individual Motion Practices of Judge Arthur D. Spatt § IV(D)(i).

Thus, given the Plaintiff's failure to respond, the Defendant's version of the material facts, to the extent it is well-supported by the evidence in the record, is deemed admitted for purposes of this motion. *See* Local Civil Rule 56.1(c).

Further, again in apparent violation of the relevant rules, the eight-page attorney affirmation that the Plaintiff submitted in opposition to the present motion does not include a statement of facts; does not attach any supporting evidence; and does not specifically cite to supposedly disputed portions of the Defendant's evidence. Rather, the Plaintiff cites extensively to the complaint, and asks the Court to simply deem those allegations as provably true. However, this approach is patently insufficient to defeat a properly-supported motion for summary judgment. *See* FED. R. CIV. P. 56(c)(1)(A) (requiring that "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of the materials in the record"); *see also Champion v. Artuz*, 76 F.3d 483, 485 (2d Cir. 1996) (noting that a plaintiff opposing summary judgment may not rely on his complaint to defeat the motion).

Also, the Plaintiff has interposed an unauthorized surreply, which, in its discretion, the Court declines to consider. *See Kapiti v. Kelly*, No. 07-cv-3782, 2008 U.S. Dist. LEXIS 20135, at *3 n.1 (S.D.N.Y. Mar. 12, 2008) (noting that "the decision to permit a litigant to submit a surreply is a matter left to the Court's discretion, since neither the Federal Rules of Civil Procedure nor the Local Civil Rules of this Court [and the Eastern District] authorize litigants to file surreplies").

Against this backdrop, the Court notes the following facts, which are materially undisputed.

B.  **The Relevant Facts**

The Plaintiff is an African-American male and an observant member of the Seventh Day Adventist Church.

On November 1, 1993, he was hired by the Port Authority as a police officer recruit. After graduating from the academy, he spent approximately 14 years working various details at JFK International Airport, LaGuardia Airport, and the Port Authority Bus Terminal.

1.  **The Plaintiff's Temporary Assignment to the Criminal Investigations Bureau**

It is undisputed that on or about October 3, 2007, the Plaintiff was temporarily assigned to the Criminal Investigations Bureau ("CIB"), as part of an initiative informally called the Silver Shield program. The Silver Shield program was designed to supplement the detective ranks in CIB with plainclothes police officers from the Public Safety Department, such as the Plaintiff.

The Plaintiff testified at his deposition that he joined the Silver Shield program subject to certain expectations given to him by the Deputy Superintendent George Johansen. In particular, the Plaintiff was apparently made to believe that his participation in the program guaranteed his eventual promotion to detective. However, other than his own testimony, there is no evidence in the record to corroborate the Plaintiff's understanding of the opportunities for advancement within the Silver Shield program.

On the other hand, the Port Authority contends that participation in the Silver Shield program is, by definition, temporary; that a police officer's participation is not a guaranteed entrée to

detective; and, conversely, that participation in the program is not a prerequisite to being promoted, so that officers who do not participate are also eligible to be made detectives.

Consistent with its contention, the Port Authority produced a memorandum from Deputy Chief of Staff Michael P. Valenti to Police Office Gus Danese, the President of the Port Authority Police Benevolent Association, entitled "Temporary Assignment – Police Officer William Prentice (#39260) JFK – Assigned to Criminal Investigations Bureau."

As its title suggests, this memo set forth certain agreed-upon terms between the Port Authority and the PBA regarding the Plaintiff's temporary assignment to CIB.

In relevant part, the memo indicated that the Plaintiff's assignment would commence on October 3, 2007 and would continue for one year, unless extended by agreement of the parties. It further stated that, at the conclusion of his assignment, the Plaintiff would return to his former position as a Port Authority police officer at JFK airport. During his assignment, the Plaintiff would retain his title and all police officer benefits, and he would remain eligible for any promotion or transfer opportunities that arose during his assignment for which he was otherwise qualified. Also, during this time, although he was not eligible for voluntary overtime as a police officer at his permanent facility, namely, JFK airport, he remained eligible to perform voluntary overtime as a police officer at other facilities, and in CIB.

On October 2, 2007, Danese signed the memo to "indicate [his] concurrence" with the terms outlined therein.

2. The March 2012 Promotion Opportunity

On March 23, 2012, while the Plaintiff was working in CIB, the Port Authority announced that it was seeking to identify qualified candidates for a promotion to detective.

On March 26, 2012, the Plaintiff applied for this position by submitting a written statement of interest, nicknamed a "handwritten."

In a supporting affidavit, Michael Ford, the Manager for Assessment Services in the Port Authority's Human Resources Department, described the process by which candidates were evaluated. Namely, after receiving the "handwrittens" of all interested candidates, a random selection process monitored by the Office of the Inspector General was used to generate a candidate pool of 160 applicants.

From there, a Promotion Review Board performed additional screening of those in the candidate pool, utilizing a number of performance-based factors, including attendance history and patterns; discipline history; number, nature and history of Civilian Complaint Investigations Unit, criminal, or civil actions; and Internal Affairs complaints or other pending allegations.

Then, the most competitive candidates were selected to proceed to an interview with members of the Public Safety and Human Resources Departments, at which time their commanding officers were also required to complete a Promotion/Developmental Appraisal form. The Promotion Review Board then reviewed the finalists' overall qualifications and made promotional recommendations to the Superintendent of Police.

On May 11, 2012, Brian Oberhelm, a Strategic HR Partner in the Port Authority's Human Resources Department, notified the Plaintiff in a memo that he had not been among the initial 160 candidates randomly-selected to proceed in the evaluation process. Therefore, he was removed from consideration for the promotion.

The Court notes that a computer printout of the names randomly-selected at the first stage of this hiring process was submitted with Ford's affidavit, and does not include the Plaintiff's name.

3. The Conclusion of the Plaintiff's Temporary Assignment

On May 14, 2013, the Superintendent of Police Michael A. Fedorko issued a memo to all commanding officers entitled "Reassignment/Transfer Police Personnel." The memo stated that, effective Sunday, May 26, 2013, the Plaintiff, who "had been On Loan on temporary assignment with CIB," would be "transferring back to his home command" at JFK airport.

5

The Plaintiff alleges, and the Port Authority does not deny, that his tenure with CIB ended, and he was returned to normal duty, because the Silver Shield program was "dissolved," or was otherwise disbanded. However, there is no evidence in the record relating to this fact.

4. The Plaintiff's Complaints of Discrimination

On June 24, 2013, the Plaintiff filed with the EEOC a charge of discrimination against the Port Authority. The Court notes that the Plaintiff's complaint was dated June 6, 2013; notarized on June 10, 2013; and, as evidenced by time-stamps, received at the EEOC's New York divisional office on June 24, 2013.

In particular, the charge alleged that the Plaintiff was discriminated against on the basis of his race, color, and religion. Namely, he alleged that, during his tenure with CIB, "many vacancies" arose for detective positions, which ultimately went to other officers, "many" of whom were junior to him in years of service; "most" of whom were Caucasian; and none of whom was a practicing Seventh Day Adventist. The Plaintiff alleged that the Port Authority had not provided him with any legitimate, non-discriminatory reason for failing to promote him.

As indicated above, despite referring to multiple alleged promotional opportunities for which he was passed over, the record in this case only contains evidence regarding the March 23, 2012 opening for a detective position. In this regard, it is also noted that, for reasons neither explained by the Plaintiff nor established by the record, the EEOC charge alleged, without elaboration, that the last act of discrimination occurred on May 6, 2013.

The EEOC transmitted notice of the Plaintiff's charge of discrimination to the Port Authority on or about July 12, 2013.

5. The July 2013 Promotion Opportunity

On July 15, 2013, after the Plaintiff had returned to his usual detail as a police officer, the Port Authority again announced that it was seeking to fill a detective position.

On July 16, 2013, the Plaintiff applied for this position by submitting a "handwritten" expressing his interest.

This time, the Plaintiff was among those initially randomly-selected to comprise the candidate pool, and in fact, was ultimately selected for the promotion. Thus, effective February 21, 2014, the Plaintiff attained the rank of detective, the position he holds today.

6. **This Action**

On February 12, 2015, after the EEOC dismissed his charge and authorized him to file suit, the Plaintiff commenced this action.

His complaint alleges two causes of action – one simply styled a "federal claim," and the other styled a "pendent New York State action."

The so-called federal claim alleges only that the Plaintiff is "entitled to due process and equal protection under the law," and that he was passed over for "various" promotions to detective due to his race; his ethnicity; his religion; and, for the first time, an unspecified "medical condition."

Although this omnibus "federal claim" identifies the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, as a source of rights for alleged disability discrimination, it fails to identify any other relevant authority for the relief sought. Nor do the Plaintiff's opposition papers make explicit or implicit reference to any federal antidiscrimination statute.

Rather, the Plaintiff apparently incorporates by reference the jurisdictional statement in his complaint, which purports to invoke the provisions of Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d *et seq.*; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 1983 ("§ 1983"); 42 U.S.C. § 1985 ("§ 1985"); and 42 U.S.C. § 1986 ("§ 1986").

Accordingly, the Court construes the complaint as asserting the following claims: (1) racial discrimination in violation of Title VI, Title VII, and § 1983; (2) religious discrimination in violation of Title VI, Title VII, and § 1983; (3) disability discrimination in violation of the ADA and § 1983

(disability is not a protected class under Title VI or Title VII); and (4) conspiracy to commit racial, religious, and disability discrimination in violation of § 1985 and § 1986.

There is also an analogous state law claim alleging discrimination based on "race, religion and perceived disability," in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 *et seq.*

## II. DISCUSSION

### A. The Standard of Review

Under FED. R. CIV. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

In this regard, " '[t]he moving party bears the [initial] burden of establishing the absence of any genuine issue of material fact.' " *Perpall v. Pavetek Corp.*, No. 12-cv-0336, 2017 U.S. Dist. LEXIS 44567, at *33 (E.D.N.Y. Mar. 27, 2017) (quoting *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010)). If this burden is met, the non-movant must then " 'designate specific facts showing that there is a genuine issue for trial.' " *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

As noted above, "the party opposing summary judgment must set forth *evidence* demonstrating a genuine issue for trial, and may not rely only on allegations in its pleadings." *Id.* at *33-*34 (emphasis supplied) (citing *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006)).

In applying this standard, "[t]he Court 'must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party.' " *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998) (quoting *Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 26 (2d Cir. 1998)). However, "conclusory statements, conjecture, or speculation by the party resisting the motion will

8

not defeat summary judgment." *Perpall*, 2017 U.S. Dist. LEXIS 44567, at *34 (quoting *Achille v. Chestnut Ridge Transp., Inc.*, 584 F. App'x 20, 22 (2d Cir. 2014)).

With these standards in mind, the Court turns to the parties' substantive contentions.

**B.      The Plaintiff's Claims of Disability Discrimination**

The Plaintiff brings claims of disability discrimination under the ADA and § 1983. For the reasons that follow, the Port Authority's motion for summary judgment dismissing these claims is granted.

      **1.      The ADA Claim is Unexhausted**

It is well-settled that "a plaintiff bringing claims under the ADA . . . must exhaust certain administrative remedies before initiating suit in the district court." *Hodges v. Holder*, 518 F. App'x 45, 46 (2d Cir. 2013). Namely, "a plaintiff typically may raise in a district court complaint only those claims that either were included in or are reasonably related to the allegations contained in [his] EEOC charge." *Id.* (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 83 (2d Cir. 2001)).

In this case, disability discrimination was not included in the Plaintiff's EEOC charge. Rather, he identified only race, color, and religion as the causes of his alleged discriminatory treatment. Despite the presence of a box clearly indicating "disability" as a basis for the charge, he did not check it.

Nor is there any apparent basis for concluding that disability discrimination is reasonably related to the allegations contained in the EEOC charge. In this regard, the Plaintiff annexed to his administrative complaint a document containing 21 typed paragraphs of factual allegations, none of which expressly or impliedly mentioned a disability.

Accordingly, the Court finds that the Plaintiff's claim based on disability discrimination under the ADA is unexhausted. Summary judgment dismissing that claim is therefore appropriate.

2.     There is no Constitutional Basis for a Separate § 1983 Claim

In general, "[f]reedom from discrimination on the basis of disability is a right secured by statute, not by the Constitution." *Lener v. Hempstead Pub. Sch.*, 55 F. Supp. 3d 267, 281 (E.D.N.Y. 2014) (internal citation omitted). Thus, where a claim of disability discrimination is premised on the substantive rights provided by the ADA, it will not be independently actionable under § 1983. *See id.*

In this case, the Plaintiff fails to articulate any constitutional basis upon which a § 1983 disability discrimination claim might be predicated. Nor do his allegations of disability discrimination premised on a failure-to-promote theory suffice to invoke substantive rights separate and apart from those provided by the ADA.

Accordingly, to the extent that the Plaintiff purports to separately allege disability discrimination in violation of § 1983, his claim fails as a matter of law.

C.     **The Plaintiff's Claims of Racial and Religious Discrimination**

The Plaintiff brings claims of racial discrimination and religious discrimination under Title VI, Title VII, and § 1983. For the reasons that follow, the Port Authority's motion for summary judgment dismissing these claims is also granted.

1.     The Title VII Claims are Untimely

"Title VII requires a claimant to file a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment action or, if the claimant has already filed the charge with a state or local equal employment agency, within 300 days of the alleged discriminatory action." *Sanderson v. N.Y. State Elec. & Gas Corp.*, 560 F. App'x 88, 90 (2d Cir. 2014) (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714-15 (2d Cir. 1996)); *see* 42 U.S.C. § 2000e-5(e)(1).

In this case, the Plaintiff alleges a theory of liability premised on the Port Authority's failure to promote him to detective. However, the record contains evidence of only one instance in which

the Plaintiff was passed over for a promotion, namely, the vacancy which was announced on March 23, 2012. He was notified that he was not selected for this position on May 11, 2012.

Yet the Plaintiff did not file his charge of discrimination with the EEOC until June 24, 2013, approximately 409 days later. Thus, it is untimely, as a matter of law. *See Sanderson*, 560 F. App'x at 90 (noting that the 180-day filing requirement "is analogous to a statute of limitations").

The Court's reasoning is not altered by the Plaintiff's repeated and non-specific references to "various [detective] vacancies" that arose while he was on special assignment to CIB, and for which he was passed over. As noted above, he cites to no evidence in the record to substantiate these occurrences.

Nor is the Court persuaded that the relevant 180-day limitations period should run from May 14, 2013, namely, when the Plaintiff's assignment with CIB ended and he was transferred back to his usual duties at JFK. In this regard, the Plaintiff cites no evidence to support his theory that this constituted an "unlawful employment action" sufficient to trigger the filing deadline.

On the contrary, the record is clear that the Plaintiff's assignment to CIB was, by definition, temporary; that it was always meant for him to return to his prior position when the special assignment ended; and that Port Authority police officers selected for participation in the Silver Shield program were routinely returned to their usual detail in precisely the same manner the Plaintiff was returned. *See Tillman v. Verizon N.Y., Inc.*, 118 F. Supp. 3d 515, 534 (E.D.N.Y. 2015) (Spatt, J.) (finding that the expiration of a temporary employee's fixed term, which, as here, substantially conformed to the terms of the plaintiff's employment offer, did not constitute a materially adverse employment action).

Nor is there any evidence that the expiration of the Plaintiff's assignment with CIB was accompanied by a materially adverse change in the terms and conditions of his employment. Rather, the October 2, 2007 memo between Valenti and Danese indicates that, during the course of his assignment to CIB, the Plaintiff maintained all the material benefits of his position as a police officer,

as well as his eligibility for promotional and transfer opportunities for which he was otherwise qualified.

Finally, the Court notes that the Plaintiff's EEOC charge conclusorily states that the last act of discrimination occurred on May 6, 2013, a fact he contends demonstrates the timeliness of his action. However, notwithstanding this notation in the EEOC charge, there is neither evidence in the current record nor any factual allegations in the charge itself to suggest that any actionable conduct occurred on that date.

Accordingly, the Court finds that the Plaintiff's claims of racial and religious discrimination under Title VII are untimely as a matter of law. Summary judgment dismissing those claims is therefore granted.

2. Alternative Analysis – The Title VII Claims Fail as a Matter of Law

Even assuming that these claims are timely, the Plaintiff has not adduced sufficient evidence to create a triable issue of fact on the issues of racial or religious discrimination.

a. The Relevant Analytical Framework

The Plaintiff's Title VII claims are governed by the burden-shifting test announced in *McDonnel Douglas v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). As the Second Circuit has explained:

> At the first stage, the plaintiff bears the burden of establishing a "prima facie" case. *Burdine*, 450 U.S. at 252-53. The requirements to establish a prima facie case are "minimal," *Hicks*, 509 U.S. at 506, and a plaintiff's burden is therefore "not onerous," *Burdine*, 450 U.S. at 253. "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Id.* at 254. At the second *McDonnell Douglas* stage, the presumption created by the prima facie case "places upon the defendant the burden of producing an explanation to rebut the prima facie face – *i.e.*, the burden of 'producing evidence' that the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason.'" *Hicks*, 509 U.S. at 506-07 (quoting *Burdine*, 450 U.S. at 254). If the defendant satisfies its burden of production, then "the presumption raised by the prima facie case is rebutted and drops from the case." *Id.* (internal quotation marks and citation omitted). At the final stage, the plaintiff then has "the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision" – a burden that "merges with the ultimate burden of persuading the court that she has been the victim of

intentional discrimination." *Burdine*, 450 U.S. at 256; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43, 120 S. Ct. 2097, 147 L. Ed. 105 (2000) (noting that after the presumption is rebutted the "sole remaining issue [is] discrimination *vel non*" (internal quotation marks omitted)).

*Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 128-29 (2d Cir. 2012).

> b. Application to the Facts of this Case
>
> i. The Plaintiff Cannot Establish a Prima Facie Case

"In order to make out a prima facie case of discriminatory failure to promote, in violation of Title VII, a plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for the job for which she applied, (3) she was denied the job, and (4) the denial occurred under circumstances giving rise to an inference of discrimination on a basis forbidden by Title VII." *Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir. 2000).

In this case, the Court assumes that the Plaintiff, as an African-American and observant Seventh Day Adventist, belongs to protected racial and religious groups. In the absence of any contrary evidence, the Court also assumes that he was qualified for the position of detective. Finally, it is undisputed that the Plaintiff was denied the March 23, 2013 promotion for which he applied.

However, the Court finds that the Plaintiff has not produced any evidence of discriminatory circumstances to justify presenting that question to a jury.

As noted above, the Plaintiff relies exclusively on unproven allegations in his complaint to support the proposition that "many," "various vacancies" in the detective ranks arose during his participation in the Silver Shield program, and that "many" of these positions went to less experienced candidates who were white and not Seventh Day Adventists.

However, the record is plainly insufficient to sustain the Plaintiff's minimal burden of establishing these facts. As noted above, other than the March 23, 2012 promotional opportunity, there is no evidence of other detective vacancies for which the Plaintiff was passed over. Nor does he offer any evidence to support his contention that the Port Authority gave preferential treatment to

Caucasian and non-Seventh Day Adventist candidates. In this regard, the Plaintiff fails to set forth any credible comparator evidence, and his unsupported allegations that (1) "the majority" of police officers promoted to detective were Caucasian, and (2) there is only one other practicing Seventh Day Adventist in the Port Authority police department, are patently insufficient to raise a genuine issue of material fact as to intentional discrimination.

### ii. There is No Evidence of Pretext

Even if the Court assumes that the Plaintiff established a prima facie case, the Port Authority satisfied its burden of setting forth a legitimate, nondiscriminatory explanation for not promoting the Plaintiff to detective in March 2012. In particular, according to the uncontroverted affidavit of Michael Ford, at the first step in the selection process, a computer-generated candidate pool of 160 randomly-selected applicants was created to move forward. The documentary evidence – including a computer printout of the names randomly-selected at the first stage of this hiring process, as well as a May 11, 2012 memo from Brian Oberhelm advising the Plaintiff had he had not been among them – corroborates Ford's account.

Thus, the burden shifts back to the Plaintiff to produce evidence, not merely allegations, that the Port Authority's explanation was not the true reason for failing to promote the Plaintiff, and that his race and religion were. However, for substantially the same reasons outlined above, the Court finds that the current record lacks any evidence to support the Plaintiff's position in that regard.

Accordingly, to the extent that it seeks to dismiss the Plaintiff's Title VII claims based on racial and religious discrimination, the Port Authority's motion for summary judgment is granted.

### 3. The Title VI and § 1983 Claims Also Fail as a Matter of Law

Claims of racial and religious discrimination brought under Title VI and § 1983 are also subject to the *McDonnell Douglas* analysis. *See Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 123 (2d Cir. 2004); *Jacques v. Adelphi Univ.*, No. 10-cv-3076, 2011 U.S. Dist. LEXIS 147100, at *6 (E.D.N.Y Dec. 19, 2011).

Thus, for substantially the same reasons that the Plaintiff's Title VII claims fail, the Court finds that the Plaintiff's claims of discrimination under Title VI and § 1983 also fail, as a matter of law. Accordingly, to the extent that it seeks to dismiss the Plaintiff's Title VI and § 1983 claims based on racial and religious discrimination, the Port Authority's motion for summary judgment is granted.

D. The Plaintiff's Conspiracy Claims under § 1985 and § 1986

As there exists no evidence reflecting an underlying deprivation of the Plaintiff's civil rights, to whatever extent he alleges related claims based on a conspiracy under § 1985 and § 1986, those claims also fail as a matter of law. *See King v. City of New York*, No. 99-cv-3669, 2007 U.S. Dist. LEXIS 23095, at *45 (E.D.N.Y. Mar. 30, 2007).

Accordingly, to the extent that it seeks to dismiss the Plaintiff's conspiracy claims under § 1985 and § 1986, the Port Authority's motion for summary judgment is granted.

E. The Court Declines to Exercise Jurisdiction Over the Pendent State Law Claim

Finally, having dismissed all of the claims over which it had original jurisdiction, the Court declines to exercise supplemental jurisdiction over the Plaintiff's state law claim alleging discrimination based on "race, religion and perceived disability," in violation of the NYSHRL. *See* 28 U.S.C. § 1367(c)(3); *see also Norton v. Town of Islip*, 97 F. Supp. 3d 241, 267-68 (E.D.N.Y. 2015) ("Where, as here, any federal 'claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims") (citations omitted); *Spiteri v. Russo*, No. 12-cv-2780, 2013 U.S. Dist. LEXIS 128379, at *235-*237 (E.D.N.Y. Sept. 7, 2013) (collecting cases for the proposition that "[c]ourts routinely decline to exercise supplemental jurisdiction where the only remaining claims are state law claims . . ."), *aff'd*, 622 F. App'x 9 (2d Cir. 2015).

Accordingly, the Plaintiff's second cause of action, styled a "pendent New York State action," is dismissed without prejudice to refiling in an appropriate forum.

### III. CONCLUSION

Based on the foregoing, the Court grants in part the Port Authority's motion for summary judgment dismissing the federal claims, over which the Court has original jurisdiction.

Further, the Court declines to exercise supplemental jurisdiction over the remaining state law cause of action, which is dismissed without prejudice to refiling in the appropriate forum.

The Clerk of the Court is respectfully directed to close this case.

It is **SO ORDERED:**

Dated: Central Islip, New York
May 23, 2017

*/s/ Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge